ELLISTON, trustee, *v.* ENGLISH *et al.*

WATKINS, trustee, *v.* ENGLISH *et al.*

1. Under the Civil Code of 1910, § 4126, cotton on cash sale shall not be considered the property of the buyer until fully paid for, although it may have been delivered to the buyer. Under the conflicting evidence the jury was authorized to find that the cotton in the instant case was not "on cash sale," but was sold on credit, or was a loan.

2. Under a contract for the sale of fifteen bales of cotton, amounting to more than $50, the same not being a cash sale, where the buyer accepts the cotton and actually receives the same, such sale is not obnoxious to the statute of frauds, which requires that certain obligations must be in writing signed by the party charged therewith, in order to be binding on the promissor. Civil Code (1910), § 3222 (7).

3. The provision of the bankruptcy act, section 60(b), to the effect that if a bankrupt makes a transfer of his property within four months before the filing of the petition in bankruptcy, the transfer shall operate as a preference to the person receiving it, or to be benefited thereby, etc., and that such transfer shall be voidable, is not applicable to the facts of this case.

4. The verdict of the jury is supported by evidence, and the court did not err in overruling the motions for new trial.

Nos. 4552, 4553. MAY 12, 1925.

Equitable petition. Before Judge Franklin. Richmond superior court. September 20, 1924.

*Wright & Jackson, William H. Fleming,* and *Pierce Brothers,* for plaintiffs in error.

*Callaway & Howard* and *Hamilton Phinizy,* contra.

HILL, J. Barrett & Co. Inc. brought an action of trover against Phinizy & Co., to recover fifteen bales of cotton, claiming that it

had been sold to Pilcher & Dillon, and that, the purchase-price not having been paid, title to such cotton had never passed out of Barrett & Co. Subsequently to the filing of the trover suit Barrett & Co. Inc. was adjudicated a bankrupt, and Roy Elliston was appointed its trustee, and became a party plaintiff in the trover suit in lieu of Barrett & Co. Thereafter Phinizy & Co. brought its equitable petition for interpleader against Barrett & Co. Inc., E. R. English, and Joseph S. Watkins as trustee in bankruptcy of Pilcher & Dillon. The petition for interpleader alleged, in substance, that Barrett & Co., since the filing of the trover suit, had been adjudicated bankrupt; that Pilcher & Dillon, the firm to whom Barrett & Co. claimed to have sold fifteen bales of cotton, had also been adjudicated bankrupt, and Joseph S. Watkins had been duly elected as their trustee; that Barrett & Co. was claiming title to the cotton on the ground that it had been sold to Pilcher & Dillon, and, the purchase-price not having been paid, the title to the cotton never did pass; that Joseph S. Watkins as trustee of Pilcher & Dillon was also claiming title to the cotton upon the ground that Pilcher & Dillon did acquire title to the cotton under the terms of the agreement that it had procured from Barrett & Co.; that E. R. English was also claiming title to the cotton upon the ground that he had shipped the cotton to Pilcher & Dillon for storage in their warehouse, and therefore the title to the cotton was in him. The several parties to the petition for interpleader duly filed their interventions setting up their respective claims to the 15 bales of cotton. Joseph S. Watkins, trustee of Pilcher & Dillon, set up in his intervention that the title to the cotton was acquired by Pilcher & Dillon from Barrett & Co., and that the delivery of the cotton to Pilcher & Dillon for the account of E. R. English was to create a preference in English over all the other creditors of Pilcher & Dillon. On the trial of the case all the parties introduced evidence tending to establish their several contentions. The jury returned a verdict in favor of E. R. English. Two motions for new trial were filed, one by Joseph S. Watkins as trustee in bankruptcy of Pilcher & Dillon, and the other by Roy Elliston, trustee in bankruptcy of Barrett & Co. Inc. Both motions were overruled by the court, and the movants excepted separately.

The motions for new trial in the above-stated cases, being predicated upon the same transaction and the same state of facts,

will be considered together. The motion of Roy Elliston, trustee in bankruptcy of Barrett & Co. Inc., seeking to set aside the verdict awarding the 15 bales of cotton to E. R. English, is based upon the usual general grounds, and 14 grounds complaining that the verdict was contrary to certain charges of the court. The motion of Joseph S. Watkins, trustee in bankruptcy of Pilcher & Dillon, to set aside the verdict awarding the cotton to E. R. English, is based upon the usual general grounds, and two grounds complaining that a new trial should be granted because the evidence showed that English knew, or had reasonable cause to believe, that the enforcement of the transfer of the fifteen bales of cotton from Barrett & Co. Inc. to Pilcher & Dillon would effect a preference in favor of English as against the creditors of Pilcher & Dillon, who had been declared bankrupt. The evidence on the material issues was conflicting; and we are of the opinion that under the evidence the jury was authorized to find the verdict in favor of English for the fifteen bales of cotton in controversy. It is true that Frank H. Barrett testified that he was president of the corporation of Barrett & Co., and let Pilcher & Dillon have the cotton upon a *cash* consideration, and that the consideration was not paid, and therefore that the title to the cotton never passed from Barrett & Co. to Pilcher & Dillon in order that they might place it to the account of English. On the other hand, W. P. Dillon, of the firm of Pilcher & Dillon, when asked the question, "Were you to pay Barrett & Co. for those fifteen bales?" replied, "Well, there was never any specific agreement made about that. I went up there in a big hurry one time, and told Frank Barrett that I needed fifteen bales of cotton right bad, and had to have the [cotton] right away, and after some argument he said he did not know whether he could or not. I was so persistent about it, he agreed to let me have fifteen bales of cotton, and never anything said whether he would sell them to me, or loan them to me, or not. There was charges accrued on the fifteen bales of cotton, amounting to $750. Q. That was owed by English to you? A. Yes sir." The jury, as they had a right to do, evidently accepted the statement of Mr. Dillon that there was no agreement for a cash sale, and that the effect of the agreement was that the transaction was a sale of the cotton on credit or else was a loan of the cotton to Pilcher & Dillon. There is also testimony of Mr. Howard,

a witness for English, that Mr. Barrett told him that "he had loaned this cotton to Pilcher & Dillon to help them in an emergency, and that they had agreed to pay him the $750 that was to be paid as charges on it." There is also evidence of Getzen, the secretary of Barrett & Co., which tends to corroborate this view of the case, and which would also authorize the jury to find the verdict which they did.

Under the Civil Code of 1910, § 4126, the title to certain articles, such as cotton, corn, rice, etc., does not pass until they are paid for on cash sale, although it may have been delivered to the buyer. In the case of *Flannery* v. *Harley,* 117 *Ga.* 483, 488 (43 S. E. 765), Chief Justice Simmons, delivering the opinion of the court, said : "Whether, in a particular instance, a sale was made for cash or on credit can be determined only by applying the cardinal rule for the construction of all contracts, viz., what was the intention of the parties? This may often be difficult of ascertainment; but once ascertained, nothing remains to be done save to give effect to that intention, whatever may be the result, so far as third persons are concerned." Under the facts of this case as outlined above, the section of the code above cited does not apply as contended, unless the evidence showed conclusively that the delivery of the cotton by Barrett & Co. was on a cash basis; but, as already pointed out, the evidence as to this was conflicting, and the jury had the right to believe those witnesses who testified that the delivery of the cotton was not upon a cash sale.

It is also insisted that even if the delivery of the cotton amounted to a sale, it was void, because it amounted to more than $50 in value, and was not in writing, and therefore was obnoxious to the statute of frauds. The evidence showed that the cotton was actually delivered by Barrett & Co. Inc. at the time and place agreed upon between Frank H. Barrett and W. P. Dillon, and this part performance of the contract takes it out of the provision of the statute. *Daniel* v. *Hannah,* 106 *Ga.* 91 (31 S. E. 734).

The contention of Watkins, as trustee of Pilcher & Dillon, is that the delivery or transfer of this cotton by Pilcher & Dillon to English was at a time when Pilcher & Dillon were insolvent, and within thirty days of their adjudication as bankrupts, and that this insolvency was known or should have been known to English, and, if not known to English, to Phinizy & Co., his agents, and

was therefore a preference under the bankruptcy law, and voidable, because it resulted in giving English the benefit of a payment to the exclusion of other creditors of Pilcher & Dillon, and therefore under the evidence the verdict of the jury should have been in favor of the trustee of Pilcher & Dillon. It is true that under the bankruptcy law, section 60b, it is provided that, "If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." The reply to this is, that the issue was submitted to the jury as to whether English or Phinizy & Co., if they were his agents, acting in this transfer, had at the time reasonable cause to believe that the transfer would effect a preference in favor of English over other creditors of Pilcher & Dillon, in his class. The verdict in effect found against Watkins as trustee of Pilcher & Dillon, and that neither English nor Phinizy & Co. had knowledge of the insolvency of Pilcher & Dillon; and we are of the opinion that the verdict thus found was authorized by the evidence. It would serve no useful purpose to set out this evidence in detail. So we are of the opinion that the verdict of the jury is supported by evidence, and that the court did not err in overruling the motions for new trial for any reason assigned.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause.*